F I L E D
Clerk
District Court

AUG 1 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant U.S. Attorneys
DISTRICT OF THE NORTHERN
    MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2952
Fax:       (670) 236-2985

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 04-00009 |
| Plaintiff, | GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL |
| v. | |
| PEDRO Q. BABAUTA, a/k/a "Pete," | Date: September 1, 2005<br>Time: 9:00 a.m. |
| Defendant. | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorneys, and hereby files its memorandum in opposition to the defendant's motion for judgment of acquittal and a new trial.

I.  THE DEFENDANT IS NOT ENTITLED TO AN ACQUITTAL OR NEW TRIAL ON COUNT FIVE PURSUANT TO MURPHY.

The defendant contends that he is entitled to a judgment of acquittal on Count Five because the evidence at trial supports a violation of 18 U.S.C. § 1001 only under a "concealment" theory, not for false reporting. Similarly, the defendant contends that he is entitled to a new trial on the same count

because the Court did not instruct the jury that it must find beyond a reasonable doubt that he had a duty to report information not submitted to the CNMI DEQ. For both contentions, the defendant relies principally on United States v. Murphy, 809 F.2d 1427 (9th Cir. 1987). Murphy dismissed an indictment charging conspiracy to conceal and falsify material facts within the jurisdiction of the IRS and to defraud the IRS in connection with a currency transaction report ("CTR") as required under 31 U.S.C. § 5313(a). Id. at 1429. However, Murphy is limited a unique and ambiguous CTR form, inapplicable to the jury's finding of facts here, and does not avail the defendant is this case.[1]

A.    Standards.

In deciding a motion under Fed. R. Cr. P. 29(c) for judgment for acquittal after the jury returned a verdict of guilty, the Court "must look to all the evidence, and, when taken in the light most favorable to the government, determine whether 'a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" United States v. Guthrie, 814 F.Supp. 942, 944 (E.D. Wash. 1993), quoting United States v. Alston, 974 F.2d 1206, 1210 (9th Cir. 1992). The Court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Rojas, 554 F.2d 938, 943 (9th Cir. 1977), quoting United States v. Nelson, 419 F.2d 1237, 1242 (9th Cir. 1969).

Under Fed. R. Crim. P. 33, the Court may grant a motion for new trial only if required in the interests of justice. However, the burden of justifying a new trial rests on the defendant. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986). Although an improper jury instruction may supply the ground for a new trial, the Court should evaluate the sufficiency of the jury instructions as a whole, not in isolation. United States v. Torees-Rodriguez, 930 F.2d 1375, 1388 (9th Cir. 1991). The final decision whether to grant a new trial lies within the discretion of the Court. United States v. Powell, 955 F.2d 1206, 1209 (9th Cir. 1992).

---

[1] In fact, the IRS form was amended to remedy the specific unconstitutional ambiguity discussed in Murphy. See United States v. Hurley, 63 F.3d 1, 13 (1st Cir. 1995).

B.  The Evidence On Count Five Was Sufficient To Support A Guilty Verdict And A New Trial Is Not Required.

The defendant's point is basically the same for both Counts Four and Five: he alleges that the information submitted by the defendant to DEQ was literally true and, consequently, there can be no convictions unless there was a finding that he was required to submit additional information. However, the jury instruction required the jury to find that the document used by the defendant contained a false statement. The Court properly did not further define the term false, because it is a "common term[] readily understandable by the jury." United States v. Hicks, 217 F.3d 1038, 1045 (9th Cir. 2000) (district court properly refused to define the term "false"). Because that instruction properly defines the criminal conduct here and the jury had sufficient evidence to make its finding, the defendant's point is misplaced both factually and legally.

First, with regard to the sufficiency of the evidence in Count Five, the jury had ample evidence from which to find that the defendant's statement was *false*, without regard to concealment. The jury had Exibit 1, which was the statement implicated in Count Five, and could determine for itself whether it considered the information contained therein to be false. Significantly, the jury heard evidence concerning the falsification of test results from February 13, 27, and 28, 2003. In addition, it could have reasonably inferred that the test results for February 28 should have been listed as repeat test results, not original test results, and found falsity on that basis.

Second, there is no legal basis for the defendant's request for an additional jury instruction on Count Five. It is undisputed that the defendant caused Exhibit 1 to be submitted, so the case was not submitted under a theory that the defendant should have been submitting forms that he did not. Thus, the false statement instruction that the Court gave would have been the same whether under a "concealment" or "false reporting" theory; in other words, there are not two different "statutory violations." See Ninth Cir. Model Jury Instr. § 8.66; United States v. Milton, 602 F.2d 231, 233 (9th Cir. 1979) (approving false statements instruction under § 1001). Moreover, in finding that Exhibit 1

contained a false statement, the jury must first consider whether the information was literally true and could have returned a verdict of not guilty on that basis. See Torees-Rodriguez, 930 F.2d at 1388 (court should examine jury instructions as a whole).

Murphy does not require an additional instruction here. Murphy dealt with an alleged conspiracy to conceal information on a materially and unconstitutionally vague CTR form. See United States v. Tuohey, 867 F.2d 534, 538 (1989); United States v. Ayala, 872 F.2d 430 (Table), 1989 WL 28236 (9th Cir. 1989). The Government in that case could not allege a § 371 conspiracy to violate a federal regulation that did not, in fact, criminalize any conduct. See Tuohey, 867 F.2d at 538. There is no such ambiguity involved here where it is undisputed that the defendant did cause Exhibit 1 to be submitted to DEQ and where the jury could find under the jury instructions that the statements therein were false. See United States v. Facchini, 874 F.2d 638 (9th Cir. 1989) (§ 1001 conviction affirmed where defendants were under no obligation to submit false unemployment benefits application); United States v. Green, 745 F.2d 1205 (9th Cir. 1985) (§ 1001 conviction affirmed where defendant was under no obligation to enter contract under which false documents were submitted).

II. THERE HAS BEEN NO SIXTH AMENDMENT VIOLATION THAT WOULD ENTITLE THE DEFENDANT TO A NEW TRIAL ON COUNTS FOUR AND FIVE.

A.   The Defendant Has No Sixth Amendment Right To Public Jury Selection Proceedings.

The Defendant argues that his Sixth Amendment right to a public trial was violated by the alleged exclusion of one spectator, CNMI Governor Juan Babauta ("Babauta"), from a small portion of the jury selection proceedings and that such a violation would require a new trial. The defendant cites no cases that extend the Sixth Amendment right to a public trial to jury selection proceedings. See, e.g., Waller v. Georgia, 467 U.S. 39 (1984) (suppression hearing); State v. Clifford, 733 N.E.2d 621, 624 (Ohio App. 1999) (motion to consolidate trials); United States v. Sherlock, 962 F.2d 1349 (9th Cir. 1992) (trial testimony); United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004) (bail hearing). The Supreme Court has required open jury selection proceedings only under the *First* Amendment's freedom of the

press, not under the *Fifth* or *Sixth* Amendments' fair trial rights. See <u>Press-Entreprise Co. v. Superior Court of California</u>, 464 U.S. 501, 509 fn. 8 (1984) ("By contrast, the question we address – whether the *voir dire* process must be open – focuses on First, rather than Fifth, Amendment values and the historical backdrop against which the First Amendment was enacted."); <u>Gannett Co., Inc. v. DePasquale</u>, 443 U.S. 368, 396 (1979) (Burger, C.J., concurring) (precluding application of Sixth Amendment to "pretrial" proceedings). Moreover, the interests implicated by public trial proceedings, "the quality of testimony, induc[ing] unknown witnesses to come forward with relevant testimony, caus[ing] all trial participants to perform their duties more conscientiously, and generally giv[ing] the public an opportunity to observe the judicial system" are not implicated by the alleged, temporary exclusion of the CNMI governor from part of jury selection. <u>United States v. Sherlock</u>, 962 F.2d at 1356; <u>see also</u>, <u>Waller</u>, 467 U.S. at 46 ("a public trial encourages witnesses to come forward and discourages perjury"); <u>United States v. Ivester</u>, 316 F.3d 955, 959 (9th Cir. 2003).

  This situation is analogous to a court individually questioning jurors at sidebar or in chambers. It is well established that no Constitutional violation results in those circumstances, even when the defendant cannot observe the proceedings. See <u>United States v. Olano</u>, 62 F.3d 1180, 1190-91 (9th Cir. 1995) (court's one-on-one meeting with a juror to determine impartiality did not violate the Sixth Amendment right of confrontation or Fifth Amendment right of due process); <u>Parker v. United States</u>, 404 F.2d 1193, 1197 (9th Cir. 1968) (court properly individually interviewed each juror with only court reporter present); <u>Polizzi v. United States</u>, 550 F.2d 1133, 1137 (9th Cir. 1976) (same in alternate holding); <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985) ("The mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of *any* constitutional right."). Accordingly, this Court should not extend the reach of the Sixth Amendment to new ground on these facts.

B. <u>No Closure of the Proceedings Occurred Here.</u>

The defendant alleges that a "partial closure" resulted when Babauta was denied access to the courtroom by court personnel. However, the courtroom was not closed and numerous members of the public, including the defendant's family, attended all proceedings, including jury selection.[2] In fact, during trial, the Court admonished all spectators from approaching jurors and limited where spectators could sit in the courtroom so that the Court could observe them. It is difficult to reconcile this record with Babauta's account. The most likely explanation for Babauta's story is that he arrived at the courtroom after jury selection had already begun and was denied immediate entry to the courtroom because his arrival would disrupt active proceedings. Babauta states that he left the courthouse. Had he remained, he would have been admitted to the courtroom along with the rest of the defendant's family and the public afer the next break. In any event, the defendant does not offer a sufficient factual basis for a finding that a partial closure resulted.[3]

The Court has the authority to set reasonable restrictions on the manner of the public's attendance for court proceedings. See Fed. R. Crim. P. 57; 28 U.S.C. § 2071; <u>see also</u> <u>Illinois v. Allen</u>, 397 U.S. 337, 351 (1970) (Douglas, J., concurring) ("A criminal trial, in the Constitutional sense, cannot take place where the courtroom is a bedlam. A courtroom is a hallowed place where trials must proceed with dignity..."). Restricting a tardy member of the public's entry, whether he is the governor or anyone else, until the next break to minimize disruption to court proceedings is a reasonable exercise of the Court's general authority to run its own courtroom. See <u>United States v. Campbell</u>, 985 F.2d 575, 1993

---

[2]Counsel actually addressed the issue of public attendance during a chambers conference with the Court. The Government requested that the Court keep the courtroom open but restrict where in the gallery the public could sit to minimize the risk of juror intimidation (because of the unique layout of the courtroom), specifically referencing Babauta's expected attendance. The Court did not close the courtroom and did not even limit where the public could sit until after the Government raised the issue of juror intimidation during the trial.

[3]Because this issue may recur on appeal, the Government requests an evidentiary hearing at which it may examine Babauta in open court and on the record regarding his desire, intention and attempt to attend this trial.

6

WL 16716 (9th Cir. 1993) ("The trial court's order ... was neither a total closure nor even a partial closure of the proceedings; it constituted at most a temporary exclusion of those who were *not even a present* to begin with." (emphasis added)). Accordingly, the temporary exclusion of Babauta did not cause even a "partial closure."

C. If An Inadvertent, Trivial Closure Occurred During Jury Selection, It Did Not Violate The Defendant's Sixth Amendment Right To A Public Trial.

Assuming *arguendo* that the Sixth Amendment's public trial right applies to jury selection and that any form of closure occurred, such closure was trivial and does not violate the Sixth Amendment. Ivester, 316 F.3d at 959; Peterson v. Williams, 85 F.3d 39, 42-43 (2d Cir. 1996) (district court's inadvertent omission of reopening court following temporary closure did not violate Sixth Amendment). The right to a public trial is not absolute and "may give way." Waller, 467 U.S. at 45. The Ninth Circuit, following several other circuits, adopted the "wise and widely-accepted Peterson test" to excuse a brief and inadvertent closure during trial. Ivester, 316 F.3d at 959 see also, Braun v. Powell, 227 F.3d 908, 919 (7th Cir. 2000) (exclusion of single excused juror from trial did not implicate the right to a public trial); United States v. Al-Smadi, 15 F.3d 153, 154-55 (10th Cir. 1994) (applying Peterson to hold that brief and inadvertent closure of the courtroom did not implicate the Sixth Amendment).

The Peterson test requires the court to determine whether the closure involved the values served by the right to a public trial. Ivester, 316 F.3d at 960. Those values are "(1) to ensure a fair trial, (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses to come forward, and (4) to discourage perjury." Id. citing Peterson, 85 F.3d at 43; Waller, 467 U.S. at 46-47. Applying these factors, Ivester found that the district court's exclusion of all spectators during brief mid-trial questioning of the *petit* jury was so trivial as not to implicate the defendant's Sixth Amendment rights. Any closure here was even more trivial, as the closure involved the exclusion of a *single* spectator from *part* of the Court's questioning of the jury *venire*. Moreover, as in Peterson, neither the Court nor the parties apparently realized that a closure had

occurred. Even the defendant did not miss Babauta because he raised no objection to his absence. Under the <u>Peterson</u> test, such a closure is trivial and does not cause a Constitutional violation.

III.   CONCLUSION

For the reasons stated above, the Court should deny the defendant's motion for judgment of acquittal and new trial.

Dated: August 18, 2005
Saipan, CNMI

Respectfully submitted,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the NMI

By: _____
TIMOTHY E. MORAN
Assistant United States Attorney