F I L E D
Clerk
District Court

SEP - 9 2005

For The Northern Mariana Islands
By_____
       (Deputy Clerk)

LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant U.S. Attorneys
DISTRICT OF THE NORTHERN
   MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2982
Fax:       (670) 236-2985

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 04-00009 |
|---|---|---|
| Plaintiff, | ) | Sentencing Hearing |
| | ) | Date: September 20, 2005 |
| v. | ) | Time: 9:00 a.m. |
| | ) | Judge: Hon. Alex R. Munson |
| PEDRO Q. BABAUTA, | ) | |
| a/k/a "Pete," | ) | GOVERNMENT'S MOTION FOR |
| | ) | ADDITIONAL SENTENCING |
| | ) | ENHANCEMENT AND UPWARD |
| Defendant. | ) | DEPARTURE |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorney, and hereby moves for an additional sentencing enhancement to the Advisory Sentencing Guidelines calculation and for an upward departure from that Advisory Guidelines level in the sentencing of the defendant, Pedro Q. Babauta.

I.  GUIDELINES INCREASES ARE APPROPRIATE FOR DEFENDANT'S USE OF A SPECIAL
    SKILL AND TO REFLECT THE TRUE SERIOUSNESS AND HARM OF HIS CRIMES.

Pursuant to Booker v. United States, – U.S. –, 127 S.Ct. 738 (2005), the Sentencing Guidelines are advisory and not binding on the Court. However, Booker also directs the Court to perform a

traditional Sentencing Guidelines analysis to guide the exercise of its discretion in sentencing. Id. at 764. In addition, because the Guidelines are not binding on the Court, the Government does not need to prove enhancements beyond a reasonable doubt to the jury. Id. The Court may find enhancements on the basis of the evidence heard during trial, submitted by the Probation Office, or during the course of the sentencing hearing.

The United States Probation Department has already prepared a Presentence Investigation Report (PSR) including a Guidelines calculation: a base level of 6 under U.S.S.G. § 2B1.1, plus two-level enhancements for the defendant's role in the offense, § 3B1.1(c); abuse of public trust, § 3B1.3; and for obstruction of justice, § 3C1.1. The Government requests that the Court apply enhancements for use of a special skill and because the amount of loss does not accurately reflect the seriousness of the defendant's crimes.

A.   A Two Level Enhancement Is Appropriate For Defendant's Use Of A Special Skill.

United States Sentencing Guideline § 3B1.3 provides for a two-level enhancement for use of a special skill, namely the defendant's scientific knowledge that enabled him to falsify data. Comment 3 to § 3B1.3 defines "special skill" as a "skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, accountants, *chemists*, and demolition experts." (emphasis added) The defendant has a specialized scientific background, including a bachelor's degree in zoology and three years of additional higher education in environmental health. He also spent over twelve years at the CUC Laboratory, much of that time as laboratory manager. He received additional training at the CUC Laboratory. The Laboratory itself was licensed during the defendant's tenure as manager by DEQ to perform those tests. Defendant himself performed and oversaw the chemical testing and analysis of water samples, including testing for bacteria. He used those skills in falsifying the test reports that were submitted to DEQ.

United States v. White involved convictions under 18 U.S.C. § 1001 for false statements contained in water turbidity reports submitted under the Safe Drinking Water Act within the jurisdiction

2

of the EPA.[1] 270 F.3d 356 (6th Cir. 2001). The Court of Appeals affirmed an enhancement for use of a special skill, finding that the defendant's "training and experience in water treatment plant operation made it significantly easier for her to falsify turbidity readings and to conceal the falsifications from the regulators." Id. at 373. The Court of Appeals discounted the fact that entering the actual numbers takes no particular skill because of the skill required to understand, manipulate and ultimately conceal the data. Id. at 373-74. In addition, the Court affirmed the application of enhancements under § 3B1.3 for both abuse of trust and use of a special skill in the same case.

### B. An Upward Departure Is Necessary To Reflect The True Seriousness and Harm Of The Defendant's Crimes.

The defendant's convictions for false statements fall under U.S.S.G. § 2B1.1, which generally applies to property offenses and includes fraud. This section evaluates the seriousness of the crime by the amount of economic loss. See § 2B1.1, cmt. 3. Because the defendant committed this fraud without any monetary gain, the Guidelines' focus on monetary loss minimizes the seriousness of the crime. Accordingly, the Court may depart upward. See Id. at cmt., (n. 19) ("There may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense."); United States v. Barnes, 125 F.3d 1287, 1291 (9th Cir. 1997); United States v. Coon, 187 F.3d 888, 900 (8th Cir. 1999) (affirming upward departure under this application note).[2]

The defendant committed this fraud to protect the reputation of CUC and by extension his wife, the CUC Executive Director, his cousin, the CUC Water Division manager, and himself. This non-monetary objective falls squarely among the non-exhaustive list of factors for the Court to consider in determining whether to depart upward. U.S.S.G. § 2B1.1, cmt., (n. 19(A)(i)) ("A primary objective of

---

[1] Turbidity is another required test under the SDWA and is listed on the "raw data sheets" submitted in evidence in the trial, e.g., Government's Exhibit ("GX") 2.

[2] Barnes and the other cases cited applied U.S.S.G. § 2F1.1 for fraud and notes thereto. Pursuant to the 2001 amendments to the Sentencing Guidelines, §2F was combined with § 2B for a single fraud section, and the relevant Application Notes were incorporated into the Commentary to § 2B. Under the 2004 version of the Guidelines, the applicable note is 19.

the offense was an aggravating, non-monetary objective."); see also <u>United States v. Andersen</u>, 45 F.3d 217, 222 (7th Cir. 1995).

In addition, the defendant's harm is not reflected in economic terms, another factor for the Court's consideration. § 2B1.1, cmt., (n. 19(A)(ii)) ("The offense caused or risked substantial non-monetary harm."); see also <u>United States v. Fadayini</u>, 28 F.3d 1236, 1242 (D.C. Cir. 1994) (affirming upward departure under this application note "based on the intangible effect that appellants' fraud had on their victim"); <u>Andersen</u>, 45 F.3d at 222 (remanded for resentencing to consider upward departure where "upward departure may certainly be warranted by the non-monetizable risk to human and animal health caused by the defendants' failure to follow FDA licensing regulations"). The defendant, for his own gain, subjected the people of Saipan to bacteria infested water. Such bacteria can cause serious illness. In addition, he eroded pubic confidence in the water supply of Saipan. These harms are not insubstantial and are not reflected by the base level of 6.

Because the defendant acted with a non-monetary objective and his harm cannot be measured in economic terms, the Court should depart upward to reflect the seriousness and harm of the defendant's crime. Where the entire public's health was put at risk, it is hard to underestimate the seriousness of these crimes. Accordingly, the Court should depart upward and increase the base offense level under § 2B1.1 by **six levels**.

C.  The Enhancements Already In the PSR Are Appropriate.

The enhancements already determined by the Probation Department are appropriate. First, a two-level enhancement is appropriate for the defendant's role in managing others, specifically Mariano Iglecias. Iglecias testified that he prepared false reports at the defendant's request. In addition, also at the defendant's instruction, Iglecias signed and released the February, 2003 monthly report (GX 1), the document at issue in Count Five of the Indictment.

Second, a two-level enhancement is appropriate under § 3C1.1 for obstructing justice. Iglecias testified that the defendant asked him to destroy the underlying data to hide his false statements and

4

requested that he lie about the fraud before Iglecias was to meet with the CUC Board of Directors. The fact that this latter request concerned an official investigation, and not specifically an instruction regarding court testimony, does not make a difference. See U.S.S.G. § 3C1.1, cmt., (n. 4) ("adjustment also applies to any other obstructive conduct in respect to the official investigation"). In addition, the defendant himself lied to and attempted to mislead the investigation performed by DEQ, prior to the filing of the indictment. This conduct also qualifies for the enhancement. See id. at cmt., (n. 4(c)) ("producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation").

Finally, the defendant is also not entitled to a two level reduction under § 3E1.1 for acceptance of responsibility. Application Note 2 clearly indicates that this reduction is not intended for a defendant that puts the government to its burden of proof at trial. The "rare situations" that warrant this reduction after trial are determined "primarily upon pretrial statements and conduct." U.S.S.G. § 3E1.1, cmt., (n. 2). The defendant showed no acceptance of responsibility before trial, such as by his attempts to cover up his scheme. This behavior is inconsistent with acceptance of responsibility. See United States v. Rutledge, 28 F.3d 998, 1001 (9th Cir. 1994); United States v. Chastain, 84 F.3d 321, 324 (9th Cir. 1996).

II.     THIS COURT SHOULD IMPOSE THE MAXIMUM SENTENCE UNDER THE STATUTE.

The total offense level in the PSR, combined with the enhancements requested by the Government, add up to level 20, which provides for a sentence of 33-41 months. The maximum penalty for a conviction under 18 U.S.C. § 1001 is five years' imprisonment. Under Booker, the Court may give a sentence in excess of the Guidelines calculation so long as it is not more than the statutory maximum. Booker, 125 S.Ct. at 764. Because of the defendant's callous indifference to the health of the people of Saipan and his brazen willingness to place his own interests, and those of his wife, over the people that he was supposed to protect, the Government requests that the Court impose a term of imprisonment of five years under each count, to run concurrently.

There was ample testimony at trial concerning the grave risk to the public health posed by the presence of bacteria in the public water supply. For example, CUC was required to warn the people of Saipan in the case of a confirmed hit for *E coli* that

> *Fecal coliforms and E. Coli are bacteria whose presence indicates that the water may be contaimnated with human or animal wastes. Microbes in these wastes can cause diarrhea, cramps, nausea, headaches, or other symptoms. They may pose a special health risk for infants, young children, some of the elderly, and people with severely compromised immune systems.*

(Government Exhibit 35.) The defendant's false statements included the falsification of hits for *E. Coli* and fecal coliforms. The defendant thus put the health and safety of the people of Saipan at risk. There is no way to know how many people might have been injured because the symptoms of these infections correspond directly with many other common illnesses, including colds, flu and food poisoning. However, it is clear that the defendant in suppressing this information acted with supreme indifference to the health of the people of Saipan.

The public health cannot be measured in monetary terms. As discussed above, the Guidelines for this crime do not accurately measure the harm of the defendant's crime. The sentence imposed needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Accordingly, the Government requests that the Court impose the maximum sentence for each offense, five years' imprisonment, to run concurrently.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the NMI

Date: September 9, 2005      By: _____
TIMOTHY E. MORAN
Assistant United States Attorney