FILED
Clerk
District Court

SEP 20 2005

For The Northern Mariana Islands
By________________
(Deputy Clerk)

Law Office of G. Anthony Long
P. O. Box 504970, Second Floor Lim's Bldg.
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>PEDRO Q. BABAUTA<br><br>Defendant | ) CRIMINAL ACTION NO. 04-0009<br>)<br>)<br>) **RESPONSE TO PROSECUTION'S MOTION**<br>) **FOR ENHANCED SENTENCING**<br>)<br>)<br>) Date: August 20, 2005<br>)<br>) Time: 2:00 p.m. |

On September 9, 2005 Babauta objected to the presentence report in this case. According to Babauta's objection, the applicable guideline level is 8 instead of 12. A copy of the objection is attached hereto. The prosecution, apparently in response to Babauta's objection, also filed an objection as well as filed a motion for enhanced sentencing with the court[1]. The probation office has not, as of this writing, responded to either objection. The prosecution's motion for an enhanced sentencing, to the extent, such a motion is appropriate, should be denied.

The prosecution seeks a two level enhancement for defendant's use of a special skill. Guidelines § 3B1.3 provides:

---

1 The prosecution's filing appears to be in response to Babauta's objection in as much as the prosecution's filing seeks to rebut Babauta's assertion that he is entitled to a two point reduction for acceptance of responsibility. See Prosecution's memorandum at 5 lines 9 - 15.

LAW OFFICE OF G. ANTHONY LONG
P.O. Box 504970, 2nd Floor Lim's Building
San Jose, Saipan, MP 96950
Tel. No: (670) 235-4802 Fax No: (670) 235-4801

LAW OFFICE OF G. ANTHONY LONG
P.O. Box 504970, 2nd Floor Lim's Building
San Jose, Saipan, MP 96950
Tel. No: (670) 235-4802 Fax No: (670) 235-4801

> if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role) ; if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under §3B1.1 (Aggravating Role) .

In this case, the probation office added two points for abuse of public trust and two points for role in the offense . The prosecution apparently contends this is error and the two point enhancement should be applied for use of a special skill instead. Based on §3B1.1, the two point enhancement for use of the special skill negates application of the two point enhancement for role in the offense. To this extent, Babauta does not object to the two point enhancement for use of a special skill instead of abuse of a position of public trust, to the extent it negates applying the two point enhancement for the role in the offense[2].

The prosecution also contends that a six point increase should be assessed to reflect the seriousness of the harm under § 2B1.1. The facts show that reports were submitted on a monthly basis. That is 12 reports a year. The facts also show that Babauta was responsible for the CUC lab for about 9 years. That means about 108 monthly reports were submitted during Babauta's tenure. The jury found two reports, one in 2001 and one in 2003, were falsified. This does not rise to the level warranting any enhancement under § 2B1.1. Moreover, according to Mariano Iglecias in his interview with Agent Guerrera, CUC would properly treat the water after receiving a positive "hit." Iglecias stated that "the qualify of the people's drinking water was never in danger because to the best of his knowledge, the CUC did respond." *See* Exhibit B. This is

---

2

Otherwise Babauta objects to the use of special skill application as it does not take a special skill to change a positive to a negative.

LAW OFFICE OF G. ANTHONY LONG
P.O. Box 504970, 2nd Floor Lim's Building
San Jose, Saipan, MP 96950
Tel. No: (670) 235-4802 Fax No: (670) 235-4801

primarily a point of contention between CUC and DEQ. DEQ was of the position that if a positive "hit" was found, CUC should not adjust or add chlorination. *See* Exhibit C at p. 2. DEQ's position was that upon a positive "hit" CUC was do nothing but wait 24 hours to take a repeat sample. *See* DEQ Regulations § 5.3.2(b). Thus, while CUC would immediately add or adjust the chlorination to correct the positive "hit", DEQ maintained that was incorrect and that, in essence, the public should remain exposed for at least another 24 hours for a repeat sample to be taken and then report the matter.

The facts and circumstances of this case do not support an upward adjustment under the guidelines, or any enhancement beyond the advisory guideline level which Baabuta contents is a level 8.

**CONCLUSION**

The prosecution has not cited any basis for increasing Babauta's sentencing level under the advisory guidelines or otherwise.

Law Office of G. Anthony Long

By: ____________________
G. Anthony Long

# EXHIBIT  A

**LAW OFFICE OF G. ANTHONY LONG**
P.O. Box 504970
2nd Floor Lim's Bldg.
San Jose, Saipan, MP 96950
Tel. 670.235.4802 Fax 670.235.4801
gal@nmi.com

September 9, 2005

VIA FAX NO. (670) 236-2992

Ms. Melinda N. Brunson
U.S. Probation Officer
U.S. Probation/Pretrial Office for the
Districts of Guam and the NMI
Fourth Floor, Horiguchi Building
P. O. Box 500687 CK
Saipan, MP 96950

Re: *USA v. Babauta*, DC NMI Cr. Case No. 04-00009

Dear Ms. Cruz:

Denying Babauta a reduction for not accepting responsibility based on advice of counsel and the exercise of his constitutional right is improper as it constitutes punishment for exercise of his constitutional rights. We have held that the district court cannot consider the defendant's refusal to discuss the offense with the probation officer as evidence weighing against acceptance of responsibility. *United States v. Vance*, 62 F.3d 1152, 1157 (9th Cir. 1995); *United States v. LaPierre*, 998 F.2d 1460, 1467 (9th Cir. 1993)[.Guideline § 3E1.1 does not allow the judge to weigh against the defendant the defendant's exercise of constitutional or statutory rights," including the right to appeal) .The PSR clearly denies the acceptance of responsibility solely on grounds of Babauta exercising his constitutional rights. Babauta is entitled to the two point reduction under § 3E1.1.

A two point enhancement for role in the offense under § 3B1.1( c) is not proper as two persons were not participants in the March, 2001 and February, 2003 reports. According to Guidelines § 3B1.1, a participant is defined as a person who is criminally responsible for the commission of the offense, but need not have been convicted. *United States v. Anderson*, 942 F.2d 606, 616- 617 (9th Cir. 1991)(en banc) abrogated on other grounds by *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The PSR does not point to or identify any person other than Babauta who knowingly falsified data in the March, 2001 and February, 2003 reports or knowingly submitted those false reports. According to Iglesias' he did not assist Babauta with the falsification of the March, 2001 report, *see* PSR ¶19, or the February,

2003 report. Thus, there are not any facts which suggest that Iglesias or anyone other than Babauta is criminally responsible for the March, 2001 and February, 2003 reports. Since Babauta acted alone with respect to the two reports he could not have been an organizer, leader, manager, or supervisor of others regarding the false statement contained in the March, 2001 and February, 2003 reports. *Anderson*, *supra*.

The two point enhancement for obstruction of justice is appropriate when a defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense. The facts do establish that Babauta attempted to influence any official proceeding or an investigation by law enforcement personnel. Indeed, the facts show that the alleged request to change the raw data sheets occurred before there was any investigation into the CUC laboratory. Indeed, according to PSR ¶ 19, the request came in March 2001 more than two years before any investigation into this matter. In the absence of an investigation or an official proceeding, there cannot be any obstruction of justice associated with such conduct. In any event, Babauta denies giving any such instruction.

The second basis for the two point enhancement is the allegation that Babauta requested Mariano Iglesias to lie to the CUC board of directors. First, this "fact" is based solely upon Iglesias' subjective interpretation of what Babauta meant by the words spoken in the vernacular. Noticeably, the report does not contain the words Babauta allegedly spoke in the vernacular. Withouit klnowing what Babauta purportedly said in the vernacular, it is impossible to detrmine the mental intent, if any, behingd the statement. Indeed, § 3C1.1 requires that a defendant act "willfully," in obstructing the administration of justice. There are no facts to suggest that whatever Babauta said to Iglesias in the vernacular suggested a willful intent for Iglesias to lie. Nevertheless, Babauta adamantly denies that he asked Mariano Iglesias to lie to the CUC board of directors. Additionally, the purported request to lie was not in connection with an official proceeding or an investigation by any law enforcement agency or law enforcement officers. The matter concerned an internal inquiry engaged in by Babauta's employer, the Commonwealth Utilities Corporation.

Although the Guidelines are advisory, Babauta maintains that the principles of *Blakely v. Washington*,542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403(2004) still apply. This means that any enhancements in the base guideline range must be based on facts found by the jury beyond a reasonable doubt or admitted by the defendant. Since the facts upon which the enhancements for obstruction of justice, role in the offense and abuse of public trust were not found by the jury or admitted by Babauta, those enhancements are not proper.

Sincerely,

G. Anthony Long

# EXHIBIT B

Uni States Environmental Protection Age 0905-0043
Criminal Investigation Division Case Number
Investigative Activity Report

jail....that "they" were after him and said "I'm being investigated." IGLECIAS recalled that BABAUTA said that they should not stay too long or be seen together or "they" might be watching him.

IGLECIAS acknowledged that despite the false reports that BABAUTA was submitting to the DEQ, the quality of the people's drinking water was never in danger because to the best of his knowledge, the CUC did respond properly. IGLECIAS said that if a "positive" hit for Total coliform or E-coli was being picked up at various sample points around the island, that as far as he knew the Water Division was being alerted and the water was being properly treated/chlorinated. IGLECIAS said that if the contaminated points had not been treated properly, he could not have stayed quiet as he would have felt very guilty and ashamed if he knew this and did not speak up. IGLECIAS admitted that if in fact he had done as directed by BABAUTA, and altered the raw data, he was very detail-oriented and would have spent "hours" doing a good job to hide their tracks. IGLECIAS stated that he was raised to be an honest man and could never do something like that and feel good about himself.

IGLECIAS recanted what he told this reporting Agent on August 5, 2003, that he realized that he should have come forward sooner with this information and thus is prepared to suffer the consequences of his actions. IGLECIAS noted that he feels he is already feeling some of it per his current suspension. This in mind, IGLECIAS said he wished that he had revealed to the Board how BABAUTA had told him to lie to the Board as it may have had an effect on their decision to suspend him, then IGLECIAS added it could have been worse, they could have fired him.

IGLECIAS closed by speaking of his loyalty to his family and to the people of the CNMI and how he takes great pride in his job and the work he does to protect the quality of drinking water for the people of the CNMI. IGLECIAS stated....the "truth needs to be told."

ATTACHMENT

None.

This document contains neither recommendations nor conclusions of the EPA.
It is the property of the EPA and is loaned to your agency;
it and its contents are not to be distributed outside your agency.
OCE Form 008 (3/98) Original-Case File Copy-SAC Office Copy-HQ Page 5 of 5

JEN00029

# EXHIBIT C



Commonwealth of the Northern Mariana Islands
**Division of Environmental Quality**
P.O. Box 1304, Saipan, MP 96950



Tels.: (670) 664-8500/8501
Fax : (670) 664-8540

Copy to water lab
Copy legal
for action
ASAP
Respond

RECEIVED 23 FEB 2001
EXEC. DIRECTOR CUC
01-490

February 23, 2001

Via hand delivery

Timothy P. Villagomez
Executive Director
Commonwealth Utilities Corporation
P.O. Box 501220
Saipan, MP 96950

**RE: NOTICE OF VIOLATION and REQUEST FOR CORRECTIVE ACTION Commonwealth Utilities Corporation (PWS ID #MP0000001) Violation of the Maximum Contaminant Level (MCL) for Microbiological Contaminants, Repeat Sampling Procedures, Public Notification, and Reporting Requirements.**

Dear Mr. Villagomez:

The CNMI Drinking Water Regulations Section 5.3.1(a)(1) establishes a Maximum Contaminant Level (MCL) for microbiological contaminants of no more than 5.0 percent total coliform positive samples collected during a month. If a public water system (PWS) serves water to its consumers that exceeds this percentage, it is in violation of the CNMI Drinking Water Regulations. Based on the reports submitted from Commonwealth Utilities Corporation (CUC) to the Division of Environmental Quality (DEQ), in July 2000, CUC collected 104 samples and 9 samples were positive for total coliform (8.7%). In October 2000, 103 samples were collected with 6 positive for total coliform (5.8%). CUC is therefore in violation of the MCL for microbiological contaminants for the months of July and October.

Section 5.3.2(b)(1) of the CNMI Drinking Water Regulations states that if a routine sample is total coliform positive, the public water system must collect a set of repeat samples within 24 hours of learning the results. A system such as CUC must collect no fewer than three (3) repeat samples for every total coliform positive sample found. Repeat samples must be collected from the sampling tap where the original positive sample was taken, one repeat at a tap within five (5) service connections upstream and at least one repeat sample at a tap within five (5) service connections downstream of the original sampling tap. CUC did not collect the minimum required repeat samples for the month of July 2000. It is also not clear in the reports that repeat samples are being collected in the manner stated above.

ALL-STATE LEGAL® EXHIBIT

As discussed with CUC officials on November 27, 2000, the intent of repeat samples is to confirm the water quality consumers are being exposed to at the time of the original sample, not after an adjustment to the treatment has been made. Accordingly, public water systems must collect repeat samples **before** any change is made to the water quality, that is, before a chlorinator is adjusted to increase the disinfectant concentration.

Section 5.3.3(i)(1) of the CNMI Drinking Water Regulations states that a public water system which has exceeded the MCL for total coliform in Section 5.3.1 must report the violation to DEQ in writing no later than the end of the next business day after it learns of the violation, and notify the public in accordance with Part 6. Section 6.1(a)(1) states that a public water system must give notice by publication of not less than three (3) consecutive days in at least one (1) daily newspaper with CNMI distribution no later than fourteen (14) days after the violation and by mail delivery (by direct mail or with the water bill) no later than forty-five (45) days after the violation. CUC has not provided the public with proper public notices of the MCL violations for the months of July and October. In addition, CUC did not provide public notice in July for failure to collect the correct number of repeat samples.

In order to avoid future violations of the CNMI Drinking Water Regulations, CUC should take the following actions from this date forward:

1. Collect a set of three (3) repeat samples for every total coliform positive found before any changes are made to the water quality, that is, before chlorination is increased. In order to accomplish this, CUC should collect four bacteriological samples (one routine and three repeats) whenever the chlorine concentration at a designated sample point is non-detect or very low. The three repeat samples must be collected as required under Section 5.32(b)(2). If the original sample is total coliform positive, the three additional samples collected will serve as repeat samples. If the original sample is total coliform negative, the three additional samples collected should be reported to DEQ as routine samples instead of repeat samples.

2. Submit to the Division a schematic sketch and a written sampling plan giving all sampling sites and repeat sample sites a unique identification number within ten (10) working days after receipt of this notice.

3. Report any violation of the Total Coliform Rule to the Division in writing no later than the end of the next business day after it learns of a violation.

4. Inform the public by a newspaper with CNMI distribution and mail delivery when an MCL or monitoring violation has occurred.

This Notice of Violation is CUC's official notice required under 2 CMC § 3131(c). Please be aware that further violations of the CNMI Drinking Water Regulations may

result in an administratively assessed civil penalty of up to twenty-five thousand dollars ($25,000) per day of violation for each violation (after opportunity for a hearing). See 2 CMC § 3131.

If you have any questions regarding this notice, please contact Mr. Jose M. Kaipat, Safe Drinking Water Branch Manager, at 664-8509. We appreciate CUC's cooperation in resolving this matter.

Sincerely,

Antonio I. Deleon Guerrero
Acting Director

cc: SDW file
DEQ AAG