F I L E D
Clerk
District Court

SEP 2 0 2005

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

For The Northern Mariana Islands
By_____
(Deputy Clerk)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CR- 04-00009-001

September 20, 2005
2:00 p.m.

### UNITED STATES OF AMERICA -v- PEDRO Q. BABAUTA

PRESENT:    HON. ALEX R. MUNSON, Chief Judge Presiding
SANAE SHMULL,  Court Reporter
K. LYNN LEMIEUX, Courtroom Deputy
TIMOTHY MORAN, Assistant U. S. Attorney
G. ANTHONY LONG,  Counsel for Defendant
PEDRO Q. BABAUTA, Defendant

PROCEEDING:    SENTENCING

Defendant was present with his court appointed counsel, Attorney Pedro Q. Babauta. Government by Timothy Moran and Jamie Bowers, AUSAs.  Also present was U.S. Probation Officer, Melinda Brunson and Gary Guerra, of the U.S. Environmental Protection Agency.

Attorney Long stated that they were not prepared to go forward with the sentencing because they had just received an addendum to the Presentence Investigation Report suggesting a six point enhancement to the guidelines.

Court informed counsel that the guidelines were only advisory and that the Court may or may not follow those recommendations.

Government argued why the enhancement to the guidelines were relevant and called witness:

Government called witness:

**GARY GUERRA** (EPA Agent). Exhibit 1; CX. Ex. A, Ex. B. RDX. RCX.

Government continued to argue that the guideline level should be at **level 18.** Defense argued against the enhancement to the offense level.

Court denied the enhancements of offense for obstruction of justice enhancement, special skill and abusive trust in the role of the defense; however, the Court did adopt a two point enhancement to the risk enhancement.  Accordingly, the total offense level in this case is a level **eight (8).**

Court adopted the presentence investigation report, **as amended**, addendum and instructed the Clerk to file the reports, under seal, and that the report be made available if the judgment is appealed. The probation officer's recommendation shall also be placed under seal. No objection by the parties.

Both Government and Defense opposed the offense level that the Court intended to use as a guideline. Government argued that it should be an offense level 18. Defense argued that the offense level should be 6.

Government recommended the maximum sentence allowable and the maximum fine allowable by the guidelines. Defense recommended a sentence of probation. Defendant gave his allocution.

SENTENCE: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant **PEDRO Q. BABAUTA,** as to each of Counts IV and V, is hereby sentenced to a term of imprisonment of twelve months, each to be served concurrently. The defendant shall remain released on his own recognizance pending designation of a facility by the Bureau of Prisons. Upon designation, he shall surrender himself to the U.S. Marshal Service for execution of sentence. Upon the completion of sentence, the defendant is ordered to serve a term of supervised release of 36 months, which shall include the following conditions:

1.  The defendant shall not commit another federal, state, or local offense;

2.  The defendant shall not unlawfully possess a controlled substance and the mandatory drug tests are suspended based on the court's determination that the defendant poses a low risk of substance abuse;

3.  The defendant shall submit to the collection of a DNA sample at the direction of the U.S. Probation Office;

4.  The defendant shall comply with the standard conditions of supervised release as set forth by the U.S. Sentencing Commission and codified under 18 U.S.C. § 3583;

5.  The defendant shall not possess a firearm or other dangerous weapon or have such weapon at his residence;

6.  The defendant shall provide the probation officer access to any requested financial information, and;

6.  The defendant shall complete 200 hours of community service under the direction of the U.S. Probation Office.

Pursuant to U.S.S.G. § 5E1.2, the defendant shall pay a fine of $5,000 which is due

immediately upon sentencing.

It was further ordered that the defendant pay a fine of $5,000 to the United States and a  special assessment fee of $200 to be paid immediately after sentencing.

The defendant was further ordered to pay the United States Government the costs of his incarceration for imprisonment and his supervised release.

No objection to the sentence by the attorneys.  Defendant was advised that he had 10 days in which to appeal his sentencing.  Further, he was advised that if he cannot afford an attorney for the appeal the Court will appoint on for him.

Defense was ordered to remain at liberty under the same terms and conditions as previously set until ordered to surrender himself to the U. S. Marshal.

Attorney Long moved the Court to allow the defendant to pay his $5,000 fine within one week of sentencing.  Court so ordered.

Adj. 3:30 p.m.

K. Lynn Lemieux, Courtroom Deputy

GOVERNMENT
EXHIBIT
1

RECEIVED AT DEQ OFFICE

7/31/03

by _____

**WESTERN REGIONAL OFFICE**
2633 E. INDIAN SCHOOL RD., STE. 400
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 955-1416
FACSIMILE: (602) 955-3207
E-MAIL: VHFAZ@TESTLAW.COM

**EASTERN REGIONAL OFFICE**
1300 SUMTER STREET, STE. 201
COLUMBIA, SOUTH CAROLINA 29201
TELEPHONE: (803) 254-7798
FACSIMILE: (803) 254-9976
E-MAIL: VHFSC@TESTLAW.COM

**THE TESTLAW PRACTICE GROUP**
VON OPPENFELD, HISER & FREEZE, P.C.

◆

LAW OFFICES
website: http://www.testlaw.com

July 24, 2003

**VIA FEDERAL EXPRESS**
John I. Castro, Jr., Director - CNMI DEQ
c/o Laura I. Mangloña
Chairwoman, Audit & Compliance Committee
Board of Directors
Commonwealth Utilities Corporation
P.O. Box 501220 CK
3rd Floor Joeten Dandan Bldg.
Saipan, MP 96650-1220

      Re:    Notice of Appeal - Intent to Revoke Laboratory Certification

Dear Mr. Castro:

      The Commonwealth Utilities Corporation ("CUC") submits this written notice of appeal in response to the CNMI Division of Environmental Quality's ("DEQ") June 18, 2003 Intent to Revoke Drinking Water Certification of the CUC Laboratory and the July 3, 2003 follow-up letter from DEQ regarding the same, which granted the CUC thirty (30) days to respond to issues related to DEQ's findings. The CUC challenges DEQ's Intent to Revoke on the grounds that the CUC laboratory has been, and remains to be, in compliance with applicable regulations. To the extent that the June 14, 2003 Compliance Order (Case No. DEQ SDW 2003-001) includes findings which are relevant to the issues in this appeal, the CUC also objects to those findings. While this appeal is being submitted pursuant to the provisions of the *CNMI Division of Environmental Quality Environmental Surveillance Laboratory On-Island Certification Plan* ("DEQ Certification Plan"), the CUC does not waive its rights of appeal and due process guaranteed by the CNMI's Constitution and as provided by the CNMI's Administrative Procedure Act and maintains that the CUC is entitled to a adjudicative hearing before the DEQ can make a final determination. *See* N.M.I. Const. art. I, § 5; 1 CMC §§ 9101 *et seq.*

      The DEQ Certification Plan provides that "falsification of data or other deceptive practices" are grounds for laboratory decertification. This is DEQ's stated grounds for decertification of the CUC laboratory. The alleged fraudulent and deceptive practices of the CUC laboratory, which are set forth in a lengthy attachment to DEQ's letter of July 3, 2003, largely fall into six general categories. This letter will first identify and respond to each category

Mr. John Castro
Appeal of Intent to Revoke
Page 2

of alleged fraudulent and deceitful conduct. This letter will then respond separately to each
individual allegation of fraudulent or deceitful conduct. As will be demonstrated in this letter,
the CUC laboratory has not engaged in fraudulent or deceitful conduct, and DEQ has no grounds
to decertify the CUC laboratory.

### GENERAL RESPONSE TO GROUNDS FOR DECERTIFICATION

First, DEQ often cites as a reason for decertification that the CUC laboratory collected
and analyzed coliform bacteria samples that were not reported. This is not a valid ground for
decertification, because the coliform samples that DEQ is referring to are not required to be
reported. Section 5.3.2 of the CNMI Drinking Water Regulations provides that required
sampling sites are those set forth in a sampling plan approved by DEQ. No other sample sites
are required to be analyzed. Section 7.2 of the CNMI Drinking Water Regulations provides that
only the analysis of required samples must be reported to DEQ. The samples in question were
from sites that were not included in the CUC laboratory's sampling plan and are therefore not
required to be sampled, and are not required to be reported if they are sampled.

The sampling plan that was used by the CUC laboratory was originally developed by
DEQ when DEQ itself conducted the drinking water sampling prior to the time that the
laboratory was certified. When the CUC laboratory was certified in 1991, it simply continued
with DEQ's sampling plan. In 1999, the CUC laboratory, in an effort to provide even greater
protection than required, began sampling an additional twenty sites. DEQ was aware of this
additional sampling because for years it has taken quarterly split samples with the CUC
laboratory. In addition, the CUC laboratory proposed in a meeting with DEQ in November 2000
that the twenty additional sites be added to the sampling plan, and even forwarded a proposed
plan to this effect in March 2001. DEQ stated that it would review the proposed plan and get
back with the CUC laboratory, but it did not. Instead, two years later, it cited the CUC
laboratory for failure to report the analysis from the additional sites. Because DEQ never
revised the sampling to require the additional sampling, the failure to report the analysis from
those Sites cannot now be a basis for decertification.

Second, on several other occasions, DEQ cites as a reason for decertification that the
CUC laboratory reported negative coliform for samples that had not been analyzed for coliform.
This is not a basis for decertification. Pursuant to the Section 5.3.2(a) of the CNMI Drinking
Water Regulations, the CUC laboratory is required to sample each site defined in the sampling
plan for total coliform. These samples are called "routine" samples. If a routine sample is
positive for total coliform, then the CUC laboratory is required to conduct repeat sampling
related to the site that had the positive result. See CNMI Drinking Water Regulations § 5.3.2(b).
Otherwise, no repeat sampling is required, and the site is deemed negative for total coliform. Id.
Pursuant to Section 10.4 of the CNMI Drinking Water Regulations, the CUC laboratory is also
required to analyze its routine samples for chlorine. No repeat samples are required for chlorine.
Despite this, the CUC laboratory regularly ran "chlorine rechecks" when the original chlorine

Mr. John Castro
Appeal of Intent to Revoke
Page 3

routine sample was low. The CUC laboratory even reported these chlorine rechecks to DEQ despite the fact that it was not required to do so. For the sites in question, the routine samples for coliform were negative, so no repeat coliform sample was required. As such, when the CUC laboratory reported the chlorine recheck for the same locations, it indicated that the location was coliform negative. The DEQ asserts that this is a misrepresentation because no repeat coliform test was run. This is not correct. The CUC laboratory was simply indicating the coliform negative status of the site as a result of the routine sample. DEQ cannot base decertification on this true representation. Also, DEQ cannot base decertification on the alleged misrepresentation of a sample that the CUC laboratory was not required to report.

Third, DEQ asserts that "on numerous occasions," DEQ reported coliform as negative when the data shows that it was positive. This did not happen on numerous occasions, as asserted by DEQ. Rather, it occurred on only six occasions out of over 3000 samples analyzed and reported to DEQ during the relevant period, a rate of 0.2%. In addition, it was an honest mistake that occurred in transferring large amounts of data from raw data sheets to reports. An error rate of 0.2% is very low and is not a basis for decertification.

Fourth, DEQ asserts that the CUC laboratory has no raw data to support certain negative coliform results reported to DEQ. This is the case for eight out of 156 sampling events over a three year period. Again, a very low rate. In addition, DEQ implies that this means that the tests were not run. This is not correct. Although the particular raw data sheet may have been misplaced on a very few occasions, DEQ's run logs establish that the tests were run.

Fifth, DEQ asserts that, on three occasions, the CUC laboratory did not report entire rounds of sampling results. DEQ's sampling plan requires that 84 samples be taken and reported per month (i.e. 21 sites per week). The sampling events that DEQ is referring to were for internal purposes and were in addition to the samples that the CUC laboratory is required to take and report to DEQ. The CNMI Drinking Water Regulations do not prohibit CUC laboratory from taking these extra samples, and there is no requirement in the regulations that the CUC laboratory report the sample results to DEQ. Therefore, the non-reporting of these samples cannot be used as a justification for decertification.

Sixth, DEQ alleges that "numerous records showed that data was inappropriately modified using 'White-out' and other means to conceal the original information." However, a review of the CUC laboratory's records only resulted in finding one time that white-out was used, which was not even for a coliform data point. Instead, the white-out was used to cover an illegible result for turbidity so that the same result could be re-written more neatly.

Although not specifically cited as a basis for decertification, the DEQ also asserts that on numerous occasions, the CUC laboratory did not record holding times for its coliform samples, and therefore the samples should have been invalidated. All samples analyzed by the CUC laboratory are incubated for a sufficient time. This includes the samples in question. Although,

Mr. John Castro
Appeal of Intent to Revoke
Page 4

on occasion, the holding times may not be set forth on the lab sheets, all holding times are set
forth on a separate run log maintained by the CUC laboratory. DEQ also questioned the validity
of certain samples that were incubated for less than twenty-four (24) hours. With the exception
of one round of testing which was incubated for twenty-two (22) hours and fifty (50) minutes, all
samples were incubated for more than twenty-three (23) hours. Based on experience, if samples
are coliform positive, the testing method will indicate positive within the first twelve (12) hours.
Also, where sample results were questionable when being read, the laboratory routinely ⟶ FALSE ⟶
incubated the questionable sample for additional time prior to making a definitive determination
of coliform positive or negative status. As such, the slightly shorter incubation times were
immaterial and did not effect the validity of the samples.

## SPECIFIC RESPONSE TO EACH OBJECTION

This section responds to the specific objections raised by DEQ in the attachment to its
letter to CUC dated July 3, 2003. In this section, CUC will first summarize the specific DEQ
objection and then will set forth its response to that objection.

1.      January 3, 2001 - IDs #1 and 2 were reported to DEQ as negative for bacteria on the
chlorine residual recheck sheet, but the samples were never analyzed for bacteria.

RESPONSE: Routine monitoring results for IDs #1 and 2 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling sites were deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the reports accurately reflected that the sites were deemed negative for bacteria as a result of the
routine sampling.

2.      January 11, 2001 - Sampling results for ID #50 were not reported to DEQ.

RESPONSE: DEQ was aware that the CUC laboratory was sampling this site.
However, ID #50 was not included in the DEQ approved sampling plan. Sites not in the
sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) &
7.2. DEQ cannot base decertification on failing to report results that were not required to be
reported.

3.      January, 11, 2001 - IDs #2 and 15 were reported to DEQ as negative for bacteria on the
chlorine residual recheck sheet, but the samples were never analyzed for bacteria.

RESPONSE: Routine monitoring results for IDs #2 and 15 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling sites were deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there

Mr. John Castro
Appeal of Intent to Revoke
Page 5

was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the reports accurately reflected that the sites were deemed negative for bacteria as a result of the
routine sampling.

4.      January 16, 2001 - ID #15 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #15 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling site was deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

5.      February 6, 2001 - ID #19 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #19 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling site was deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

6.      February 13, 2001 - ID #46 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #46 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling site was deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

7.      February 20, 2001 - ID #10 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #10 were negative for bacteria;

Mr. John Castro
Appeal of Intent to Revoke
Page 6

therefore, no repeat sampling was required, and the sampling site was deemed negative for bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also, the report accurately reflected that the site was deemed negative for bacteria as a result of the routine sampling.

8.    February 27, 2001 - ID #46 was reported to DEQ as negative for bacteria on the chlorine residual recheck sheet, but the sample was never analyzed for bacteria.

    RESPONSE:  Routine monitoring results for ID #46 were negative for bacteria; therefore, no repeat sampling was required, and the sampling site was deemed negative for bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also, the report accurately reflected that the site was deemed negative for bacteria as a result of the routine sampling.

9.    March 6, 2001 - The CUC laboratory collected samples from fifteen (15) sites on March 6, 2001, that were not reported to DEQ. Sampling results for ID #29, which were collected on March 7, 2001, were also not reported to DEQ.

    RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites. However, the fifteen (15) sites and ID #29 were not included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base decertification on failing to report results that were not required to be reported.

10.    March 13, 2001 - Testing results for IDs #16 and 19 were coliform positive, but were reported to DEQ as coliform negative.

    RESPONSE:  This is simply an error in transcribing the results from the raw data sheets to the reports. This type of human error is to be expected occasionally and it occurred at the CUC laboratory very rarely. It only occurred six (6) times in transcribing over three-thousand (3,000) results or about 0.2% of the time. DEQ cannot base decertification on human error that occurs this infrequently. Because the routine samples were reported as negative, the repeat samples were not reported. CNMI Drinking Water Regulations §§ 5.3.2 & 7.2.

11.    March 13, 2001 - Sampling results for IDs #27, 39, 40, 47 were not reported to DEQ.

    RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites. However, IDs #27, 39, 40, 47 were not included in the DEQ approved sampling plan. Sites not

Mr. John Castro
Appeal of Intent to Revoke
Page 7

in the sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base decertification on failing to report results that were not required to be reported.

12.     March 20, 2001 - Testing results for ID #2 were coliform positive, but were reported to DEQ as coliform negative.

        RESPONSE:  This is simply an error in transcribing the results from the raw data sheets to the reports. This type of human error is to be expected occasionally and it occurred at the CUC laboratory very rarely. It only occurred six (6) times in transcribing over three-thousand (3,000) results or about 0.2% of the time. DEQ cannot base decertification on human error that occurs this infrequently. Because the routine samples were reported as negative, the repeat samples were not reported. CNMI Drinking Water Regulations §§ 5.3.2 & 7.2.

13.     March 20, 2001 - Sampling results for ID #28 were not reported to DEQ.

        RESPONSE:  DEQ was aware that the CUC laboratory was sampling this site. The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan. Therefore, ID #28 was not included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base decertification on failing to report results that were not required to be reported.

14.     March 27, 2001 - ID #2 was reported to DEQ as negative for bacteria on the chlorine residual recheck sheet, but the sample was never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #2 were negative for bacteria; therefore, no repeat sampling was required, and the sampling site was deemed negative for bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also, the report accurately reflected that the site was deemed negative for bacteria as a result of the routine sampling.

15.     April 3, 2001 - Sampling results for ID #30 were not reported to DEQ.

        RESPONSE:  DEQ was aware that the CUC laboratory was sampling this site. The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan. Therefore, ID #30 was not included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base decertification on failing to report results that were not required to be reported.

Mr. John Castro
Appeal of Intent to Revoke
Page 8

16.    April 3, 2001 - ID #19 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

    RESPONSE:  Routine monitoring results for ID #19 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling site was deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

17.    April 3, 2001 - Sampling results for IDs #30, 30A, 30B, 47, 53, 53A, and 53B were not
reported to DEQ.

    RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites. The
CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took
no action on the proposed plan. Therefore, IDs #30, 30A, 30B, 47, 53, 53A, and 53B were not
included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to
be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base
decertification on failing to report results that were not required to be reported.

18.    April 10, 2001 - ID #20 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

    RESPONSE:  Routine monitoring results for ID #20 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling site was deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

19.    April 17, 2001 - ID #3 was reported to DEQ as negative for bacteria on the chlorine
residual recheck sheet, but the sample was never analyzed for bacteria.

    RESPONSE:  Routine monitoring results for ID #3 were negative for bacteria; therefore,
no repeat sampling was required, and the sampling site was deemed negative for bacteria for that
round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there was no
requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

Mr. John Castro
Appeal of Intent to Revoke
Page 9

20.     May 1, 2001 - IDs #1, 1A, 1B, 2, 2A, 2B, 12, 12A, 12B, 13, 13A, 13B, 21, 21A, 21B
were reported to DEQ as negative for bacteria on the chlorine residual recheck sheet, but the
samples were never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for IDs #1, 2, 12, 13, and 21 were negative for
bacteria; therefore, no repeat sampling was required, and the sampling sites were deemed
negative for bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b).
Further there was no requirement for chlorine residual recheck under the regulations. CNMI
Drinking Water Regulations § 10.4.  DEQ cannot base decertification on reporting that was not
required.  Also, the report accurately reflected that the sites were deemed negative for bacteria as
a result of the routine sampling.

21.     May 8, 2001 - IDs #10, 10A, 10B, 16, 16A, and 16B were reported to DEQ as negative
for bacteria on the chlorine residual recheck sheet, but the samples were never analyzed for
bacteria.

        RESPONSE:  Routine monitoring results for IDs #10 and 16 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling sites were deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b).  Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4.  DEQ cannot base decertification on reporting that was not required.  Also,
the report accurately reflected that the sites were deemed negative for bacteria as a result of the
routine sampling.

22.     May 15, 2001 - IDs #3, 3A, and 3B were reported to DEQ as negative for bacteria on the
chlorine residual recheck sheet, but the samples were never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #3 were negative for bacteria; therefore,
no repeat sampling was required, and the sampling site was deemed negative for bacteria for that
round of sampling. CNMI Drinking Water Regulations § 5.3.2(b).  Further there was no
requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4.  DEQ cannot base decertification on reporting that was not required.  Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

23.     May 22, 2001 - IDs #2, 2A, 2B, 17, 17A, and 17B were reported to DEQ as negative for
bacteria on the chlorine residual recheck sheet, but the samples were never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for IDs #2 and 17 were negative for bacteria;
therefore, no repeat sampling was required, and the sampling sites were deemed negative for
bacteria for that round of sampling. CNMI Drinking Water Regulations § 5.3.2(b).  Further there
was no requirement for chlorine residual recheck under the regulations. CNMI Drinking Water

Mr. John Castro
Appeal of Intent to Revoke
Page 10

Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also, the report accurately reflected that the sites were deemed negative for bacteria as a result of the routine sampling.

24.     June 19, 2001 - The raw data for bacteria analysis is missing.

        RESPONSE:  The CUC laboratory's recordkeeping is almost entirely flawless, with the exception of a few isolated instances where some of the raw data has been misplaced. DEQ implies that the missing data indicates that the samples were not analyzed. This is not true. The CUC laboratory's run logs, which have been reviewed, indicated that the samples were in fact run. DEQ cannot base decertification on a few isolated instances where lab sheets have been misplaced, but the tests have actually been performed.

25.     July 3, 2001 - Sampling results for ID # 26 were not reported to DEQ.

        RESPONSE:  DEQ was aware that the CUC laboratory was sampling this site. The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan. Therefore, ID #26 was not included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base decertification on failing to report results that were not required to be reported.

26.     July 3, 2001 - The raw data for bacteria analysis is missing for ID #6B.

        RESPONSE:  In routine sampling, ID #6 was positive for total coliform. Repeat samples were taken at IDs #6, 6A and 6B. ID #6B was negative. This result was reported for subsequent repeat sampling. This is not a basis for decertification.

27.     July 10, 2001 - Sampling results for ID # 51 were not reported to DEQ.

        RESPONSE:  DEQ was aware that the CUC laboratory was sampling this site. The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan. Therefore, ID #51 was not included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base decertification on failing to report results that were not required to be reported.

28.     July 31, 2001 - IDs #17A and 17B were reported to DEQ as negative for bacteria on the chlorine residual recheck sheet, but the samples were never analyzed for bacteria.

        RESPONSE:  Routine monitoring results for ID #17 was negative for bacteria; therefore, no repeat sampling was required, and the sampling site was deemed negative for bacteria for that

Mr. John Castro
Appeal of Intent to Revoke
Page 11

round of sampling. CNMI Drinking Water Regulations § 5.3.2(b). Further there was no
requirement for chlorine residual recheck under the regulations. CNMI Drinking Water
Regulations § 10.4. DEQ cannot base decertification on reporting that was not required. Also,
the report accurately reflected that the site was deemed negative for bacteria as a result of the
routine sampling.

29.    August 14, 2001 - ID #17 was reported as coliform negative to the DEQ.

       RESPONSE: The lab data for ID #17 was coliform negative. DEQ's concern apparently
arises because an incorrect positive was struck over with a negative on the lab sheets. If the
result had been positive, then repeat samples would have been taken; however, repeats were not
run. DEQ cannot base decertification on correct reporting.

30.    August 14, 2001 - Sampling results for IDs #24, 28, 30, 39, 40 and 51 were not reported
to DEQ.

       RESPONSE: DEQ was aware that the CUC laboratory was sampling these sites. The
CUC laboratory proposed a revised sampling plan which included these sites; however, DEQ
took no action on the proposed plan. Therefore, IDs #24, 28, 30, 39, 40, and 51 were not
included in the DEQ approved sampling plan. Sites not in the sampling plan are not required to
be reported. CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2. DEQ cannot base
decertification on failing to report results that were not required to be reported.

31.    August 21, 2001 - The raw data for bacteria analysis is missing.

       RESPONSE: The CUC laboratory's recordkeeping is almost entirely flawless, with the
exception of a few isolated instances where some of the raw data has been misplaced. DEQ
implies that the missing data indicates that the samples were not analyzed. This is not true. The
CUC laboratory's run logs, which have been reviewed, indicated that the samples were in fact
run. DEQ cannot base decertification on a few isolated instances where lab sheets have been
misplaced, but the tests have actually been performed.

32.    September 4, 2001 - Testing results were not reported to DEQ.

       RESPONSE: DEQ's sampling plan requires that 84 samples be taken and reported per
month (i.e. 21 sites per week).  The sampling event that DEQ is referring to was for internal
purposes and was in addition to the samples that the CUC laboratory is required to take and
report to DEQ. The CNMI Drinking Water Regulations do not prohibit CUC laboratory from
taking these extra samples, and there is no requirement in the regulations that CUC laboratory
report the sample results to DEQ. DEQ cannot base decertification on the non-reporting of these
samples.

Mr. John Castro
Appeal of Intent to Revoke
Page 12

33.    September 7, 2001 - Sampling results for ID #49 were not reported to DEQ.

RESPONSE:  DEQ was aware that the CUC laboratory was sampling this site.  The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan.  Therefore, ID #49 was not included in the DEQ approved sampling plan.  Sites not in the sampling plan are not required to be reported.  CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2.  DEQ cannot base decertification on failing to report results that were not required to be reported.

34.    September 11, 2001 -  Sampling results for IDs #40, 40A, and 40B were not reported to DEQ.

RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites.  The CUC laboratory proposed a revised sampling plan which included these sites; however, DEQ took no action on the proposed plan.  Therefore, IDs #40, 40A and 40B were not included in the DEQ approved sampling plan.  Sites not in the sampling plan are not required to be reported.  CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2.  DEQ cannot base decertification on failing to report results that were not required to be reported.

35.    September 25, 2001  - Sampling results for IDs #40, 40A, 40B and 41B were not reported to DEQ.

RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites.  The CUC laboratory proposed a revised sampling plan which included these sites; however, DEQ took no action on the proposed plan.  Therefore, IDs #40, 40A, 40B, and 41B were not included in the DEQ approved sampling plan.  Sites not in the sampling plan are not required to be reported.  CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2.  DEQ cannot base decertification on failing to report results that were not required to be reported.

36.    September 25, 2001 - IDs #9, 9A, and 9B were reported to DEQ as negative for bacteria on the chlorine residual recheck sheet, but the samples were never analyzed for bacteria.

RESPONSE:  Routine monitoring results for ID #9 were negative for bacteria; therefore, no repeat sampling was required, and the sampling site was deemed negative for bacteria for that round of sampling.  CNMI Drinking Water Regulations § 5.3.2(b).  Further there was no requirement for chlorine residual recheck under the regulations.  CNMI Drinking Water Regulations § 10.4.  DEQ cannot base decertification on reporting that was not required.  Also, the report accurately reflected that the site was deemed negative for bacteria as a result of the routine sampling.

37.    October 2, 2001 - Sampling results for ID #32 were not reported to DEQ.

Mr. John Castro
Appeal of Intent to Revoke
Page 13

RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites.  The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan.  Therefore, ID #32 was not included in the DEQ approved sampling plan.  Sites not in the sampling plan are not required to be reported.  CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2.  DEQ cannot base decertification on failing to report results that were not required to be reported.

38.    October 2, 2001 - ID #5 was reported to DEQ as negative for bacteria on the chlorine residual recheck sheet, but the sample was never analyzed for bacteria.

RESPONSE:  Routine monitoring results for ID #5 were negative for bacteria; therefore, no repeat sampling was required, and the sampling site was deemed negative for bacteria for that round of sampling.  CNMI Drinking Water Regulations § 5.3.2(b).  Further there was no requirement for chlorine residual recheck under the regulations.  CNMI Drinking Water Regulations § 10.4.  DEQ cannot base decertification on reporting that was not required.  Also, the report accurately reflected that the site was deemed negative for bacteria as a result of the routine sampling.

39.    October 18, 2001 - Sampling results for IDs #40, 51A and 51B were not reported to DEQ.

RESPONSE:  DEQ was aware that the CUC laboratory was sampling these sites.  The CUC laboratory proposed a revised sampling plan which included these sites; however, DEQ took no action on the proposed plan.  Therefore, IDs #40, 51A, and 51B were not included in the DEQ approved sampling plan.  Sites not in the sampling plan are not required to be reported.  CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2.  DEQ cannot base decertification on failing to report results that were not required to be reported.

40.    October 25, 2001 - Sampling results for ID #53A were not reported to DEQ.

RESPONSE:  DEQ was aware that the CUC laboratory was sampling this site.  The CUC laboratory proposed a revised sampling plan which included this site; however, DEQ took no action on the proposed plan.  Therefore, ID #53A was not included in the DEQ approved sampling plan.  Sites not in the sampling plan are not required to be reported.  CNMI Drinking Water Regulations §§ 5.3.2(a) & 7.2.  DEQ cannot base decertification on failing to report results that were not required to be reported.

41.    November 2, 2001 - Testing results for ID #10 were coliform positive, but were reported to DEQ as coliform negative.

RESPONSE:  This is simply an error in transcribing the results from the raw data sheets to the reports.  This type of human error is to be expected occasionally and it occurred at the